The Dayton Metal Stamping Co., Inc., Appellant, v.
Smithhart, d. b. a. Crown Tool Co., Appellee.*

(No. 2535—Decided October 29, 1959.)

*Mr. Joseph D. Chamberlain, Jr.,* for appellant.
*Mr. Arthur T. Eaton,* for appellee.

*Per Curiam.* This action arose out of dealings between the parties from April 5 to August 2, 1957. Plaintiff, appellant herein, was endeavoring to supply to Delco Division of General Motors Corporation certain parts in connection with a new device known as "Air Ride," to be incorporated in the forthcoming 1958 model of the Chevrolet automobiles.

Plaintiff ordered from defendant, appellee herein, certain dies to be used on plaintiff's punch presses in order to produce the parts needed by Delco.

There were orders and transactions between the parties during this time, which are not pertinent here. The present issues are concerned principally with an order of April 5, 1957, for dies to cost $7,800, with certain engineering changes therein requested on May 31, 1957, at an additional cost of $2,700, and an order on May 1 for a line reaming machine to cost $3,000.

After considerable unsuccessful effort to produce dies and resultant parts acceptable to Delco, a conference was held among Delco representatives and the parties herein on August 2, 1957, after which defendant ceased his efforts. He retains the dies and the reaming machine.

Plaintiff instituted this action against defendant for the

---

*Motion to certify the record overruled, February 3, 1960.

recovery of payments already made to him and for the use of plaintiff's shop for experimental or testing services, praying for the total sum of $3,548. Defendant filed an answer and cross-petition seeking $12,276.90 for completing the dies and for other charges. Trial resulted in verdicts and judgments for plaintiff in the sum of $343 and for defendant in the sum of $11,425.40.

Plaintiff assigns as errors: (1) The overruling of its motion for judgment notwithstanding the verdict; (2) the overruling of its motion for new trial for misconduct of counsel; (3) the fact that the verdict is claimed to be contrary to law; and (4) the fact that the verdict is claimed to be contrary to the manifest weight of the evidence.

The written order for the dies on April 5, 1957, includes these provisions: "Parts to conform strictly to blueprint's. Important: 125 Samples required by May 1st. Terms: Progressive payments upon completion of various dies."

Defendant admitted on the witness stand that the parts did not conform strictly to the blueprints, but says that plaintiff's president waived that requirement by a telephone conversation wherein he is claimed to have said that the parts were acceptable and that defendant might proceed with his work upon the dies. Plaintiff's president denies making any such statement. Much of the present controversy centers about this supposed conversation.

A thorough examination of the 423 pages of testimony contained in the bill of exceptions leaves us in confusion: (1) as to whether such conversation took place; (2) if so, when—whether before or after the last engineering change on the dies as requested on May 31st; (3) whether such a conversation pertained to approval of hand-made sample parts prepared before the making of the dies, or to a larger number of parts run by defendant upon plaintiff's punch presses after the dies were completed following the engineering changes; etc.

There is a controversy also as to whether plaintiff made the "progressive payments" mentioned and just what sort of schedule these words signified. We find the evidence utterly confusing upon this issue.

Plaintiff makes vigorous complaint that counsel for de-

fendant, after twice asking and obtaining permission of the court to amend his pleading in minor respects, finally at the close of the trial filed an amended answer and cross-petition in which he shifted his position: The original pleading alleged the performance by him and failure of plaintiff to pay; the amended pleading alleged the failure of plaintiff to make the progressive payments as justification for the defendant's refusal to complete the order.

The work to be done on such orders is obviously quite technical and requires a considerable degree of accuracy. The case was undoubtedly a difficult one to try. This fact may well account for the frequent passing back and forth by the opposing counsel of several witnesses for further redirect and recross-examination. It may also account for the important change made in defendant's pleading, without any implication of misconduct.

Plaintiff attached to its brief a copy of Judge McBride's opinion in the trial court on its motions for judgment and for new trial. As the accuracy of this copy is not challenged, we quote therefrom the following:

"This is the order [that of April 5, 1957] and the only one of the several orders, which expressly required that the parts be made according to the blue print specifications. The testimony was overwhelming, if not undisputed, that the tools ordered on this job did not meet the specifications. The variances, as indicated by the Delco's report, indicates substantial variances which made the parts and the tools worthless.

"In view of this fact it is difficult to comprehend the amount of the verdict except for the testimony of the defendant of a telephone conversation relating apparently to the preliminary parts, required to be delivered by the original purchase order, in which conversation the defendant asserted that plaintiff indicated that it was 'O.K. to build them.' The plaintiff denied this statement but did indicate that the sample parts were urgently needed and apparently that they should be delivered to Delco for their preliminary use. Upon this conversation the defendant built a waiver of the condition of the written purchase order and the acceptance of the dies. Allowing the defendant credit for the progressive payments (as the jury has done) the question still

arises as to whether this part of the Delco job, involving two figures, totaling $10,500.00 is supported by any substantial evidence. As we have indicated the waiver or acceptance of the dies is dependent entirely upon a fragmentary phone conversasation, the subject and extent of which is not clear. We have examined portions of the record on this phase of the case and are unable to say whether the 'O.K.' described by the defendant refers to approval to build the preliminary parts for sample use or to acceptance of the parts after delivery and inspection of dies which produced the proper parts. Under the circumstances a complete transcript will be required to review this question of weight and significance of the evidence. This question may be determined more appropriately by a reviewing court.''

Unfortunately, the transcript of the testimony fails to rescue us from a similar quandary. Since we, like the trial court, find it impossible to say where justice lies, the only proper course open to us is to reverse the judgment.

''As a general rule when the record is in such shape that the appellate court can not in justice determine what judgment should be rendered the case will be remanded for such further proceedings as may be necessary in the trial court.'' 4 Ohio Jurisprudence (2d), 611, Appellate Review, Section 1223.

With the advantage of having before us the transcript of the evidence, we feel that the trial court should have granted a new trial, although not on the basis of any misconduct of counsel as claimed in the second assignment of error.

What we have already said sufficiently disposes of the other assignments.

The judgment will be, and hereby is, reversed and the cause remanded for further proceedings according to law.

*Judgment reversed.*

WISEMAN, P. J., CRAWFORD and KERNS, JJ., concur.